**UNITED STATES of America**

v.

**Robert Stanley PERKINS.**

**Crim. A. No. 7141.**

United States District Court,
D. New Hampshire.

Jan. 31, 1972.

Carroll F. Jones, Asst. U. S. Atty., Concord, N. H., for plaintiff.

Anthony A. McManus, Dover, N. H., for defendant.

OPINION

BOWNES, District Judge.

On September 10, 1971, the defendant was indicted for failure to comply with an order of his local draft board to submit to an Armed Forces physical examination. 32 C.F.R. 1628.16; 50 U.S.C. Appendix § 462(a). After being advised of his rights, he waived trial by jury and agreed to the following stipulation of facts:

1. Robert Stanley Perkins, the defendant herein, was born on August 30, 1951, and was duly registered with the Selective Service System under the provisions of the Selective Service Act of 1967 on September 3, 1969.

2. Robert Stanley Perkins was properly ordered for an Armed Forces physical examination by Local Board No. 14, Woodstock, Vermont, on April 20, 1971, and that Robert Stanley Perkins was ordered to report for said

physical examination to Local Board No. 14, Woodstock, Vermont on May 10, 1971 for forwarding to an Armed Forces Examining and Entrance Station and that Robert Stanley Perkins did so report.

3. Robert Stanley Perkins was forwarded to the Armed Forces Examining and Entrance Station at Manchester, New Hampshire, on May 11, 1971.

4. Robert Stanley Perkins was provided with government form SF 89, Report of Medical History at said Armed Forces Examining and Entrance Station on May 11, 1971 and was requested by Station personnel to fill out said form.

5. At approximately 10:15 a.m. on May 11, 1971, Robert Stanley Perkins stated that he refused to sign government form SF 89 to Staff Sergeant Alfred A. Manning, Jr.

6. At approximately 10:35 a.m. on May 11, 1971, Robert Stanley Perkins was instructed to sign government form SF 89, Report of Medical History, by Captain Schuyler N. Cunniff, Commanding Officer, Armed Forces Examining and Entrance Station, Manchester, New Hampshire, and that Robert Stanley Perkins did then and there refuse to sign said government form SF 89.

At the trial, the defendant's Selective Service file was introduced through the Government's only witness, Captain Agrafiotis. Ex. 1. Written statements of the Armed Forces Examination and Entrance Station (hereinafter referred to as AFEES) personnel who were present when the defendant refused to sign the Report of Medical History were offered but not allowed in evidence since those personnel were not present for cross-examination.

At the conclusion of the Government's case, defendant's counsel moved for acquittal. The motion was denied, and defendant took the stand.

He testified that he reported to AFEES, in accordance with the notice to report which he had received; that he completed an aptitude test and filled out a record of arrests and convictions. He attempted to fill out a Report of Medical History Form, but did not complete it and refused to sign it claiming that he was not sure of the accuracy of his answers. The questions on the form were explained to the registrants as a group, but the defendant claims he "didn't understand" the questions. He testified that he would have signed the form except for the warning above the signature blank which provides:

*Warning* A false or dishonest answer to any of the questions on this form may be punished by fine or imprisonment (18 U.S.C. 1001).

I certify that I have reviewed the foregoing information supplied by me and that it is true and complete to the best of my knowledge.

I authorize any of the doctors, hospitals, or clinics mentioned above to furnish the Government a complete transcript of my medical record for purposes of processing my application for this employment or service.

After refusing to sign the medical information form, the defendant was asked to leave the room and he was taken to see a Captain, who specifically requested him to sign the form. According to the defendant, the Captain told him he would probably flunk the physical so he ought to sign. He still refused, and the Captain then asked the defendant if he wanted to make a statement of his reasons for not signing. He declined to make such a statement. The Captain then told him that the matter would be referred to the State Selective Service Director. The defendant testified that he would have taken the physical examination, but he was not given an opportunity to do so after refusing to sign the Medical History Form.

The issue is, therefore, whether a registrant has refused to submit to a physical examination when he partially fills out but does not complete and sign the Report of Medical History because he is unsure of the correctness of his answers

to the questions asked therein. Determination of this issue requires a brief explanation of AFEES' procedure.

The Medical History Form must be prepared by the registrant as part of his preinduction medical examination:

*Medical History (SF 89).* Standard Form 89 (from items 17 through 30, including the signature) will be prepared by the examinee. Personnel assigned to the medical examination section may assist the examinee in the preparation of the form, but will not make entries on the form. The examinee's medical history should prove of importance for the medical examination. Hence, the examining physician should carefully evaluate the information supplied by the examinee and summarize under item 40 (SF 89) all pertinent data. AR 601-270 ¶ 4-20g.

After completing the Medical History Form, the registrant proceeds to various examination stations as part of the medical examination, where he receives various tests and evaluations, *i.e.*, orthopedic, dental, urinalysis, chest X-ray, serology, height and weight, blood pressure and pulse, vision, and hearing. AR 601-270 ¶ 4-20b et seq. Results of the tests are entered on the Report of Medical Examination, SF 88, and "reviewed by the military medical officer in the presence of the examinee" to determine whether the registrant is qualified for military service. AR 601-270 ¶ 4-20 h(12)(a). Registrants may be found medically unacceptable for military service in accordance with the fitness standards of AR 40-501 on the basis of the clinical tests alone. For instance, a registrant's hearing acuity level, or visual acuity level, may fall below minimum standards without regard to his medical history. If so, the registrant is not fit, and the matter is at an end. In some cases, a registrant's medical history is the most important part of his physical examination. For example, an authentic history of surgical operation(s) for gastric or duodenal ulcer or tuberculosis active at any time within the past two years will disqualify without regard to

the registrant's condition at the time of examination. AR 40-501. In most cases, however, the medical history complements the clinical tests since the medical officer must evaluate the test results in light of earlier illnesses and conditions to determine whether a registrant is presently qualified for military service. The Medical History Report is, therefore, an integral part of the physical examination, and a registrant who refuses to even attempt to answer the questions could be found guilty of having refused to submit to a physical examination, provided that proper procedures are followed at AFEES.

The necessary procedures are detailed in AR 601-270 ¶ 3-31(2):

*Uncooperative.* A registrant who refuses to comply with instructions, rules or procedures prescribed for registrant processing, or who refuses to take part in some, or all, of the prescribed processing, testing, or examinations will be informed that his refusal constitutes a felony under the provisions of the Military Selective Service Act of 1967. He will be further informed that convictions of such offense in civil proceedings will subject him to punishment by imprisonment for not more than 5 years, or a fine of not more than $10,000, or both. If he then persists in his refusal, the following action will be taken:

(a) If his conduct permits (e.g., if he is not engaging in physical or vocal activity which he will not refrain from doing in order to be reasoned with), he will be requested, but not required, to make a signed statement, dated, in his own handwriting, as follows (insert the phrase or phrases which pertain to him): "I refuse to comply with instructions, rules or procedures prescribed for registrant processing." "I refuse to take part, or all, of the prescribed processing." "I refuse to take prescribed tests/examinations." Such statement should be witnessed by at least two witnesses who will affix their signatures to the statement.

The evidence in the instant case is that the defendant was requested to give a statement of reasons for not signing the Medical Report, but was not specifically warned that his refusal constituted a felony and was not told of the penalties involved. I am aware that the defendant's Selective Service file contains affidavits to the contrary. Affidavits are, however, not proof and since the Government chose not to have the Processing Captain and other AFEES personnel testify at the trial, I must find the facts from properly introduced evidence. This procedural defect deprived the defendant of due process and compels a finding of not guilty. United States v. Ford, 431 F.2d 1310 (1st Cir. 1970). It is obvious that the purpose of the warning required under AR 601–270 ¶ 3–31(2) is to advise the registrant of the gravity of his actions and the penalties that might follow so that he will have one last chance to change his mind. Chernekoff v. United States, 219 F.2d 721, 724–725 (9th Cir. 1955).

The defendant did complete most of the form; the only part left blank is family history which requires the age, state of health, and cause of death of blood relatives. The registrant is also required to check boxes to indicate whether these relatives had various diseases or health conditions. Many persons do not known the exact age and medical history of their blood relatives and, while most would fill in the form by guessing, a conscientious individual might leave these spaces blank and refuse to take the oath required to the accuracy of the answers given. It must be noted that the warning is given in the disjunctive: "false *or* dishonest" rather than the conjunctive: "false and dishonest." This can be construed to mean that an inaccurate or incorrect statement, even if honestly made, subjects the registrant to fine or imprisonment. While the defendant's position may be tenuous and strained, the wording of the form does lend it a thin substance. Moreover, the defendant did not actually refuse to take the clinical test. He was not given the opportunity to do so.

AR 601–270 ¶ 3–31(2) describes the exact procedure to be followed by AFEES personnel when a registrant is uncooperative. It is not a straitjacket; paragraph 3–31b provides that records may be held at AFEES pending "further hospital study/consultation, or additional mental evaluation" when a registrant's acceptability is undetermined. Concededly, paragraph 3–31b does not contemplate the exact situation presented here, but it could have been used and, if defendant did not complete the form after a reasonable chance to verify medical data, it would have been proper to treat him as an uncooperative registrant. I am aware of the additional burden that this may place on AFEES personnel. Such a burden is small compared to the possible criminal sanctions faced by a registrant who does not sign the Medical History Report Form because he is unsure of the questions which he is required to answer and the meaning and effect of the warning and oath on the form.

I find the defendant not guilty.